**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION**

| | |
|---|---|
| OLGA ZAKHARENKOVA, | Case No. EDCV 26-2353-AS |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARKWAYNE MULLIN, et al., | |
| Respondents. | |

**INTRODUCTION**

On May 4, 2026, Olga Zakharenkova ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), along with supporting exhibits. (Dkt. No. 1). Petitioner claims that she is entitled to release from custody, or alternatively a bond hearing, due to her arrest on March 10, 2026, without notice or a pre-deprivation hearing in

violation of her Fifth Amendment due process rights. (See Petition at 7-17).

On May 12, 2026, Respondents filed an Answer to the Petition, along with a supporting declaration of deportation officer Jonathan Ruiz ("Ruiz Decl.") and exhibits. (Dkt. No. 8). They contend that Petitioner's detention is authorized by law due to her violation of immigration and criminal laws and that her challenge to the deprivation of a bond hearing is moot, as well as unexhausted, because she received a bond hearing on April 30, 2026, which she has not yet appealed to the Board of Immigration Appeals ("BIA"). (See Answer at 3-4, 8-10). They further contend that this Court lacks jurisdiction to review the immigration judge's decision to deny bond. (Id. at 4-7). Petitioner filed a Reply on May 15, 2026. (Dkt. No. 10). She contends, among other things, that the bond hearing she received on April 30 was legally deficient. (Reply at 4, 9-10).

For the reasons stated below, the Petition is GRANTED, and Respondents are enjoined from continuing to detain Petitioner unless she is provided a new bond hearing before a neutral decisionmaker at which the government must bear the burden to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[1]

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3, 4, 7).

**BACKGROUND**

Petitioner is a native of Ukraine and a citizen of Russia. (Petition ¶ 19). She lawfully entered the United States most recently on April 19, 2016, on a B1-B2 visa which expired on October 10, 2016. (Petition ¶ 20; Ruiz Decl. ¶ 5). On September 20, 2016, she filed an I-589 application for asylum with United States Citizenship and Immigration Services ("USCIS"). (Petition ¶ 21; Ruiz Decl. ¶ 6). On January 5, 2026, she completed her first interview for her pending application at the USCIS Los Angeles asylum office in Tustin, California. (Petition ¶ 23).

She has "a supportive network here in the United States, including her father, mother, son, one aunt, and one cousin." (Petition ¶ 25). She also "has some criminal history" but has "complied with all the terms and conditions of any sentence received." (Petition ¶ 22). Her criminal history includes misdemeanor convictions in Nevada state court for driving under the influence of alcohol ("DUI"), on March 28, 2018; and domestic battery and stalking, on June 18, 2025. (Dkt. No. 1-2 at 2, 5, 7; Ruiz Decl. ¶¶ 7-8, Ex. A at 4, 6-8).

On March 10, 2026, during her second interview for her pending I-589 application at the USCIS Los Angeles asylum office, Petitioner was arrested by ICE and served with a Notice to Appear. (Petition ¶ 23; Ruiz Decl. ¶ 10, Ex. B). She had received no prior written notice of reasons for the arrest, nor was she afforded any

prior hearing to assess whether her detention was justified. (Petition ¶¶ 25-26).

A bond hearing was scheduled before an immigration judge on April 17, 2026, but Petitioner's counsel withdrew the bond request. (Ruiz Decl. ¶ 11, Ex. C). On April 30, 2026, an immigration judge held a bond hearing pursuant to 8 U.S.C. § 1226(a) and denied relief upon finding that Petitioner posed a danger to the community. (Ruiz Decl. ¶ 12, Ex. D).

**DISCUSSION**

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); see Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process."). Detention under § 1226(a) is "discretionary" and "provides for release on bond or conditional parole." Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023). Upon being detained under this provision, Petitioner was entitled to a prompt, individualized bond hearing at which the government had "the burden of proving by clear and convincing evidence that [Petitioner's] continued detention is justified." Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed, 2020 WL 8970669 (9th Cir. 2020); see also Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("At the outset of its

4

decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community."); Melchor-Melchor v. Noem, 2026 WL 760058, at *1-3 (C.D. Cal. Mar. 16, 2026) (petitioner detained under § 1226(a) was entitled to bond hearing before immigration judge where the government had burden to prove dangerousness or flight risk by clear and convincing evidence); Gutierrez v. Semaia, 2026 WL 916773, *5 n.3 (C.D. Cal. Mar. 27, 2026) (same). "The 'clear and convincing' standard requires the Government to present evidence to establish 'an abiding conviction that the truth of [the] factual contentions at issue is highly probable.'" N.A. v. Warden, Adelanto Det. Facility, 2026 WL 734587, at *7 (C.D. Cal. Feb. 20, 2026) (quoting Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc)), report and recommendation adopted, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026).

Here, Respondents contend that the Petition is moot because Petitioner received a bond hearing before an immigration judge on April 30, 2026. (Answer at 3-4; Ruiz Decl. ¶ 12, Ex. D). However, Respondents offer no facts about that hearing to show that it was legally sufficient. They have provided only a boilerplate form order on which the immigration judge indicated that Petitioner's bond request was denied because she is a "[d]anger to the community," but there is no information about the basis for this finding or the standard that was applied. (Ruiz Decl. ¶ 12, Ex. D). Petitioner, on the other hand, alleges that it "was not an individualized bond [hearing] before an impartial immigration judge where the government [bore] the burden of establishing by clear

and convincing evidence that Petitioner is a flight risk and/or danger to the community." (Reply at 4, 9). Based on this allegation, which the Court accepts, Petitioner has not received a legally sufficient bond hearing since being detained on March 10, 2026.[2]

Respondents also contend that the Court lacks jurisdiction to overturn the immigration judge's bond decision and that Petitioner's challenge to the decision is unexhausted because she has not appealed to the BIA. (See Answer at 4-9). First, although this Court cannot reweigh the evidence or second-guess the immigration judge's discretionary determinations regarding bond, see 8 U.S.C. § 1226(e); Martinez, 124 F.4th at 785, the Court may review the decision for "abuse of discretion" to determine whether the immigration judge "applied the correct legal standard," Martinez, 124 F.4th at 779-80, 785 (citations and internal quotation marks omitted). Second, courts have discretion to excuse or waive the prudential exhaustion requirement for detainees seeking habeas relief under 28 U.S.C. § 2241 where appropriate. Laing v. Ashcroft, 370 F.3d 994, 1160-61 (9th Cir. 2004). Here, the Court waives exhaustion because no further development of the record is needed to conclude that Petitioner's bond hearing was legally inadequate. See Martinez v. Scott, 2025 WL 2689844, at *4 (W.D. Wash. Aug. 27, 2025) ("[C]ourts should require administrative

---

[2] Although Petitioner also contends that due process required the immigration judge to consider alternatives to detention and financial ability to pay the bond (see Reply at 16), the Ninth Circuit has indicated that these factors need not be considered where the noncitizen is found to be a flight risk or danger. See Martinez, 124 F.4th at 786.

exhaustion where it would aid in developing a more complete factual record for federal judicial review, prevent forum shopping, and conserve federal judicial resources by permitting agencies to correct their own mistakes where they are likely to do so." (citing Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007))), report and recommendation adopted, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). Moreover, "[a]s other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost certainly unlawful, and thus would suffer irreparable injury." Rivera Mendoza v. Noem, 2026 WL 923311, at *5 (C.D. Cal. Apr. 1, 2026) (citations omitted); Miri v. Bondi, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026) (waiving exhaustion because petitioner's challenge to bond decision concerned a legal question and requiring him to go before the BIA "would prolong his unconstitutional detention, thereby causing irreparable injury").

Accordingly, Petitioner is entitled to a new individualized bond hearing at which the government must bear the burden to demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community. This generally suffices as a remedy for those whose detention is governed by § 1226(a). See, e.g., Wang v. Noem, 2026 WL 258442 (C.D. Cal. Jan. 29, 2026); Engonga v. Noem, 2025 WL 3764077 (C.D. Cal. Dec. 23, 2025); see also Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) ("[T]he Section 1226 framework typically provides for post-detention, rather than pre-deprivation, bond hearings. If Section 1226 and its regulations are followed, this provides for

sufficient process, as detentions will only be made upon an initial DHS determination that an individual is a flight risk or poses a danger to the community." (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022))).

To the extent that Petitioner contends that she instead merits immediate release, the present record does not support such relief here.[3] It is true that ordering a post-deprivation bond hearing does not always suffice for immigration detainees subject to § 1226(a). In particular, as district courts in this Circuit have concluded, noncitizens who are re-detained after previously being released on an order of supervision are entitled to pre-detention notice and a hearing, and a post-deprivation bond hearing is not an adequate remedy for the failure to provide those pre-deprivation procedures; in such cases, therefore, the petitioners are typically granted immediate release from custody. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *4-6 (C.D. Cal. Feb. 3, 2026); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1166 (C.D. Cal. 2025). But this is not such a case, as Petitioner was not previously released from ICE custody on an order of supervision. Although Petitioner claims she had a due process right to a pre-detention hearing (see Petition

---

[3] Nonetheless, should Respondents later violate an order of this Court by failing to provide a new bond hearing under the proper standard, Petitioner at such time may seek appropriate relief from this Court, which may include release from custody. See, e.g., Melchor-Melchor, 2026 WL 760058, at *1-3 (ordering petitioner's immediate release where government had failed to provide a bond hearing applying the proper burden of proof as the court previously ordered).

at 2, 14-15; Reply at 7-8), she fails to establish such a right in her circumstances.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide Petitioner "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process she is due, the Court considers the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. at 335.

Petitioner fails to demonstrate that these factors weigh in favor of requiring a pre-deprivation hearing. As to the first factor, Petitioner's private interest in remaining out of custody may be significant, but it is nonetheless limited, given that she apparently was never determined to merit being out of custody, and the government generally has the authority to arrest and detain noncitizens pending a decision on their removal, 8 U.S.C. § 1226(a). In this way, her situation differs considerably from those noncitizens who were previously detained and then released from immigration custody. The government's decision to release such individuals from custody creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner, it seems, had received

10

no such "implicit promise" or other assurance, her claim to a protected interest in remaining at liberty was more tenuous.

Second, because Petitioner had not previously undergone an assessment of her status or a determination as to whether her release would pose a danger to the community or a flight risk, providing her with a post-detention hearing would pose only a low or moderate risk of erroneous deprivation of liberty. See also Rodriguez Diaz, 53 F.4th at 1209-10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings). Again, in this respect Petitioner's situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens]

11

will be successfully removed.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). That interest is naturally greater for noncitizens who present a flight risk while removal proceedings are pending against them. But where Petitioner had not previously been subject to removal proceedings and had not been assessed for flight risk, the government's interest in detaining her at least initially was significant. Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner, unlike those who are re-detained after being released on bond, was not entitled to a pre-detention hearing, and her due process rights are instead adequately addressed by a prompt post-deprivation hearing pursuant to § 1226(a). See, e.g., Quinonez Herrera v. Mullin, 2026 WL 915184, at *3 (C.D. Cal. Apr. 3, 2026) (petitioner who was not on supervised release when detained failed to demonstrate that due process entitled her to release rather than a bond hearing under § 1226(a)); Zhang v. LaRose, 2026 WL 794202, at *1 (S.D. Cal. Mar. 20, 2026) (rejecting petitioner's argument that he was "entitled by the due process clause to a pre-deprivation hearing before he is arrested in the first instance for having overstayed his visa"); Okoth v. Kaiser, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7, 2026) (rejecting petitioner's claim that he was entitled to a pre-detention hearing where, unlike in cases

involving noncitizens who were re-detained while on supervised release during the pendency of removal proceedings, petitioner had not been previously detained and released on bond); Ngugi v. Lyons, 2026 WL 35610, at *2 (E.D. Cal. Jan. 6, 2026) (same); Vega v. LaRose, 2025 WL 3247778, at *2 (S.D. Cal. Nov. 20, 2025) (same); Salazar v. Noem, 2026 WL 915128, at *4 (E.D. Cal. Apr. 3, 2026) (same).

**ORDER**

Accordingly, the Court GRANTS the Petition and ENJOINS Respondents from continuing to detain Petitioner unless she is provided a new bond hearing within seven (7) days at which the government must bear the burden to prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the community.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 19, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

13